Jackard Construction Company, Inc., Petitioner
v. Commonwealth of Pennsylvania, Pennsylvania
Prevailing Wage Appeals Board, Respondent.

Argued December 8, 1978, before Judges CRUMLISH,
JR., BLATT and MACPHAIL, sitting as a panel of three.

566

*John S. Davidson,* with him *Pannebaker, Yost & Davidson,* for petitioner.

*William G. Dade,* Assistant Attorney General, with him *Charles S. Solit,* General Counsel, for respondent.

OPINION BY JUDGE CRUMLISH, JR., June 26, 1979:

The Pennsylvania Prevailing Wage Appeals Board assessed liquidated damages against Jackard Construction Co., Inc., under Section 11 of the Pennsylvania Prevailing Wage Act (Act),[1] 43 P.S. §165-11, and determined that Jackard had intentionally violated the Act by paying wages below the prevailing wages predetermined by the Secretary of the Department of Labor and Industry. Jackard challenges the evidentiary support for the Board's determination.

We affirm.

Jackard argues: (1) certain Commonwealth exhibits, received into evidence, constituted inadmissible hearsay; (2) the Board's assessment of damages at $8,885.02 is not supported by substantial evidence; (3) the hearing examiner erroneously excluded evidence proffered to show that certain Commonwealth witnesses were biased; and (4) the Board's finding of an intentional violation by Jackard, resulting in the imposition of the penalty provided by Section 11, 43

---

[1] Section 11 of the Pennsylvania Prevailing Wage Act, Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §165-11.

P.S. §165-11(c),[2] lacks evidentiary support in the record.

These are the facts: The General State Authority (GSA) awarded Jackard a contract for the construction of a replacement refrigeration system at the South Mountain Restoration Center in Franklin County, a "public work" as defined in Section 2(5) of the Act, 43 P.S. §165-2(5). The Act requires successful bidders on public works to pay prevailing minimum wages as predetermined by the Secretary.[3]

Construction began in January, 1974, and a routine site visit by a Department field investigator in August, 1974, precipitated an investigation of Jackard's payment practices. Several of Jackard's employees were interviewed and its payroll records audited. The Secretary gave notice of a fair hearing to be held to take testimony relating to Jackard's failure to pay the predetermined prevailing minimum wage. At the hearing on October 28, 1975, Department investigators gave extensive testimony, as did several of Jackard's employees and two of its officers. The hearing examiner, in 69 findings of fact, determined that Jackard had intentionally violated the Act by underpaying its employees and by failing to keep payroll records required by Department regulations.

As explanation, Jackard's president testified that, because of the relatively small size of the project, he had hired several men to work in more than one classification. Jackard did not comply with the Depart-

---

[2] A finding of an intentional violation of the Act results in a three-year period of ineligibility for all public works contracts.

[3] The Secretary predetermined the following prevailing minimum wages applicable to the South Mountain Restoration Center project:

| | |
|---|---|
| carpenter | $9.33 hr. |
| laborer | 6.13 hr. |
| painter | 6.65 hr. |
| ironworker (welder) | 10.21 hr. |

ment's regulations requiring employers with multi-crafted workers to keep records on daily time cards which would reflect the time each employee had worked in different classifications for which different wages are payable. See 34 Pa. Code §9.109(2). Instead, Jackard simply estimated the proportional breakdown of the entire job between carpentry and labor and determined a flat hourly rate that fell between those predetermined by the Secretary for the respective crafts.

Jackard does not dispute the examiner's finding that it underpaid its employees but insists that the finding of $8,885.02, as representative of the pay deficiency, was based solely on inadmissible hearsay.

The Commonwealth introduced exhibits C1 and C4 into evidence to establish the computation of $8,-885.02 in liquidated damages.[4] C1 and C4 summarized the Commonwealth's investigation and listed the underpaid employees, the applicable predetermined wages, the total number of hours each had worked, and then purported to allocate the total working hours of each person into the various classifications for which different rates were payable. The investigators acknowledged that the summaries' breakdowns by work classifications were based in part on out-of-court statements by the individual workmen.

[4] The Commonwealth's exhibits calculated the following amounts as due to the individual employees:

| | |
|---|---|
| Bruce Alwine | $ 563.96 |
| Floyd Parmer | 1,275.04 |
| David R. McKnight | 935.00 |
| James Hall | 1,324.92 |
| Harry M. Champion | 962.58 |
| Samuel Price | 1,561.50 |
| Joseph Hepner | 749.20 |
| Edward Fluke | 1,365.70 |
| Alan Lee Clawson | 147.12 |
| **TOTAL** | **$8,885.02** |

Jackard stipulated to the veracity of the names, the predetermined wages and the total number of hours each worker had worked as shown in C1 and C4, but would not stipulate to the accuracy of the hourly breakdowns by work classification of the multi-crafted workers.

Without doubt, summaries of out-of-court statements as to the breakdown of the total hours into the various classifications constituted hearsay.[5] *See A & B Electrical Contracting Co. v. Department of Labor and Industry,* 13 Pa. Commonwealth Ct. 506, 319 A.2d 188 (1974). However, it is axiomatic that where, as here, hearsay is admitted without specific, timely objection, it will be given its natural probative value if it is corroborated by competent evidence in the record. We thus limit our inquiry into the evidentiary quality of exhibits C1 and C4 to a determination of whether there is corroboration in the record. *See Ceja v. Unemployment Compensation Board of Review,* 41 Pa. Commonwealth Ct. 487, 399 A.2d 807 (1979).

Rather than defining the various classifications, the Act and its regulations adopt the industry's custom and usage as a standard. *See* 34 Pa. Code §9.102; 34 Pa. Code §9.013(9); *See also Department of Labor and Industry v. Meyer Brothers Co.,* 53 Pa. D. & C. 2d 275 (1971).

In the instant case, there was extensive testimony that the workers had been hired to do carpentry work, and testimony from the workers as to the number of hours they had worked, the number of hours for which

---

[5] Jackard also challenges the reception of Commonwealth's Exhibits C8, 9, 11, 12, 13 and 14 which were written statements by the workmen given prior to the hearing. However, these statements were offered solely for the purpose of showing that complaints had been made to the Department and were not offered to show the truth of the matter asserted therein. Accordingly, they do not constitute hearsay.

they had been paid, the nature of the work they performed and the carpentry tools they had used which corroborated the hearsay of exhibits C1 and C4.

In determining whether substantial evidence supports a finding, we need not conclude that the evidence *compels* a certain result. *See D. D. Akins, Inc. v. Department of Labor and Industry,* 16 Pa. Commonwealth Ct. 191, 329 A.2d 869 (1974). We need only determine that a reasonable man, taking into account the technical expertise of the administrative agency, and considering all the evidence and the reasonable inferences to be drawn therefrom, could have reached the same result.

We have reviewed this extensive record and are convinced that the hearsay in the report is supported by the necessary corroboration and that the Board's assessment of damages is based on substantial evidence.[6]

Jackard's challenge to the hearing examiner's finding that his violation was intentional within the meaning of Section 11(h), 43 P.S. §165-11(h), is also without merit. That Jackard's pay scale was below the prevailing wage rate and in conscious disregard of the workmen's rights is clear. Substantial evidence of an intentional violation of the Act is found in Jackard's prior experience with public works contracts, in its president's admitted familiarity with the Act's regulations in its disregard of complaints of underpayment by workers and in its submission to the Department of weekly wage certificates attesting to Jackard's compliance with the terms of the Act.

---

[6] We reject Jackard's argument that the direct testimony of Joseph Hepner and Floyd Parmer, neither of whom testified at the hearing, was necessary to substantiate the hearing examiner's findings. *All-Weld, Inc. v. Department of Labor and Industry,* 34 Pa. Commonwealth Ct. 482, 383 A.2d 982 (1978).

Thus, we will not disturb the examiner's finding that Jackard's violation was intentional. *See Pennsylvania Prevailing Wage Appeals Board v. Steve Black, Inc.*, 27 Pa. Commonwealth Ct. 21, 365 A.2d 685 (1976); *D. D. Akins, Inc. v. Department of Labor and Industry, supra.*

Jackard's final argument that the hearing examiner erred in refusing to receive testimony purporting to show a conspiracy among four of the workmen to claim compensation for unworked hours is also without merit. Jackard had stipulated during the hearing to the total number of hours each had worked. Proof of a conspiracy, under these circumstances, is irrelevant. Furthermore, the hearing examiner was liberal in allowing evidence offered to support charges of bias. Nevertheless, in the hearing examiner's judgment, which we will not dispute, Jackard did not effectively impugn the Commonwealth witnesses' credibility.

Accordingly, we

ORDER

AND Now, this 26th day of June, 1979, the order of the Pennsylvania Prevailing Wage Appeals Board in the above captioned matter dated August 4, 1977, is hereby affirmed.