**YORK EXCAVATING COMPANY, INC., Petitioner,**

v.

**PENNSYLVANIA PREVAILING WAGE APPEALS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1995.
Decided Aug. 7, 1995.

Kurt A. Blake, for petitioner.

Frayda Kamber, Deputy Chief Counsel, for respondent.

Richard C. Lengler, Assistant Counsel, for intervenor, Department of Labor and Industry, Prevailing Wage Division.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

NEWMAN, Judge.

York Excavating Company, Inc. (York) and Les Stewart, its president, appeal from an order of the Prevailing Wage Appeals Board (Board) that affirmed a decision of the Secretary of Labor and Industry (Secretary) finding that York committed an intentional violation of the Pennsylvania Prevailing Wage Act (Act),[1] by paying workers, in the aggregate, $2,370.79 less than the predetermined prevailing minimum wages for six public work projects.[2] We affirm.

York was the excavating subcontractor on six public work projects in south central Pennsylvania.[3] The project specifications for

---

1. Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §§ 165–1—165–17.

2. Specifically, Section 5 of the Act requires that "[n]ot less than the prevailing minimum wages as determined hereunder shall be paid to all workmen employed on public work." 43 P.S. § 165–5.

3. These projects were (1) East Petersburg Elementary School; (2) Farmdale Elementary School; (3) Addition and Alterations to Sara Lindemuth Elementary School; (4) Additions and Alterations to Crestview Elementary School, Mt. Holly Springs Elementary School and North Dickinson Elementary School; (5) Service Center for the Capital Area Intermediate Unit; and (6) Renovations to Conestoga Valley High School.

each project included predetermined minimum wage rates issued by the Prevailing Wage Division of the Department of Labor and Industry (Division). York did not challenge these predeterminations.

Following a complaint that York was not paying full fringe benefits on the projects, although it was deducting the entire amount from the workers' paychecks, the Division's inspector met with a York representative. York's representative acknowledged the underpayment and agreed to correct the problem.

After the meeting, the Division received other complaints from workers that York had instructed them, when completing time reports on prevailing wage jobs, to reduce their time in the "operator" classification by one-half and to report the other half at the lower-paying laborer classification. The result was that workers received less than the prevailing wage for their proper job classifications on these projects.

On August 30, 1990, the Division issued an order to show cause, alleging, *inter alia*, that York intentionally paid workers less than the prevailing minimum wage rates. Specifically, the Division maintained that York directed workers who performed work falling under the operator classification to reduce the hours that they spent in that classification by one-half and to assign the remainder of their time to the lower-paying laborer classification. York filed a timely answer, denying the Division's material allegations.

Following a hearing before a hearing examiner on July 22, 1991, the Secretary issued a final determination, finding that York intentionally paid workers $2,370.79 less than the predetermined minimum wage rates on the six public work projects. The Secretary, therefore, debarred York from public work projects for three years pursuant to Section

11(e) of the Act, 43 P.S. § 165–11(e), and requested the Attorney General to proceed to recover statutory liquidated damages for the Commonwealth, which are payable under Section 11(f) of the Act, 43 P.S. § 165–11(f). The Secretary also held that York's due process rights had not been violated by the Division's refusal to disclose the names of the workers whose initial complaints led to the Division's investigation of York.

York appealed to the Board, and the Board affirmed. This appeal followed.

■ The issues presented on appeal are: [4] (1) whether substantial evidence exists in the record to support the Secretary's finding that York intentionally underreported and underpaid operator time in violation of the Act; and (2) whether the Division violated York's right to due process when it refused to reveal the names of the workers whose initial complaints led to its investigation of York.[5]

With regard to the first issue, we note that under Section 11(h)(1) of the Act,

[t]he following shall constitute substantial evidence of intentional failure to pay prevailing wage rates:

Any acts of omission or commission done wilfully or with a knowing disregard of the rights of the workmen resulting in the payment of less than prevailing wage rates.

43 P.S. § 165–11(h)(1).

This court has held that the following evidence supports a finding that a contractor intentionally failed to pay prevailing minimum wages: a contractor's admission that certain employees whom he knew were skilled laborers and who performed skilled work were paid at general laborer rate, *Duffy v. Department of Labor & Industry, Prevailing Wage Division*, 160 Pa.Common-

---

**4.** Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**5.** We note that in its brief, York also raises the issue of whether the Act is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), Act of September 2, 1974, P.L.

93–406, Title I, Subtitle A, § 1, 88 Stat. 832, *as amended*, 29 U.S.C. §§ 1001 *et seq.* However, York's counsel indicated at oral argument on April 5, 1995, that he wished to abandon this argument. Therefore, we need not consider the issue. For a discussion of this issue, see *Jay R. Reynolds, Inc. v. Department of Labor & Industry, Prevailing Wage Appeals Board*, —— Pa.Commonwealth Ct. ——, 661 A.2d 494 (1995).

wealth Ct. 140, 634 A.2d 734 (1993); evidence that a contractor misclassified its workers and disregarded their complaints of underpayment, *Jackard Construction Co., Inc. v. Pennsylvania Prevailing Wage Appeals Board*, 43 Pa.Commonwealth Ct. 565, 403 A.2d 618 (1979); a contractor's false certifications that prevailing wages were paid, *Pennsylvania Prevailing Wage Appeals Board v. Steve Black, Inc.*, 27 Pa.Commonwealth Ct. 21, 365 A.2d 685 (1976); and testimony that a contractor told workers to give false information to the Division's inspectors, *Dale D. Akins, Inc. v. Department of Labor & Industry*, 16 Pa.Commonwealth Ct. 191, 329 A.2d 869 (1974).

Our review of the record in the present appeal indicates that four workers, who performed work falling under the operator classification, testified that York representatives instructed them to underreport their operator time by one-half and to report the remainder of their time at the lower-paying, laborer classification.[6] This testimony is corroborated by York's certified payroll records. We note that the pattern reflected in these records is consistent with the practice described by York's workers.

■ York asserts that the evidence presented by the Division does not constitute substantial evidence to support the Secretary's finding that it committed an intentional violation of the Act. York maintains that the testimony of its own witnesses clearly substantiates that its records accurately reflect the amount of time that each employee spent operating heavy equipment. According to York, it would be "nothing less than a miscarriage of justice" if this court were to uphold the Secretary's finding that York intentionally violated the Act, when such finding was based on the testimony of workers who could not remember on which jobs they had worked or how many hours they had spent on each job and in each classification. York's Brief at 13.

■ The law is well settled, however, that the Secretary is the ultimate fact finder, and issues of credibility and evidentiary weight are within his exclusive discretion. *Leonard S. Fiore, Inc. v. Department of Labor & Industry, Prevailing Wage Appeals Board*, 129 Pa.Commonwealth Ct. 583, 566 A.2d 632 (1989), *rev'd on other grounds*, 526 Pa. 282, 585 A.2d 994 (1991). Here, the Secretary found the Division's witnesses to be credible, while rejecting the testimony of York's witnesses. Because our review of the record reveals that the testimony of the Division's witnesses supports a finding that York acted wilfully and in knowing disregard of its workers' rights to be paid prevailing wages, we must reject Employer's argument.[7]

■ Next, York asserts that its due process rights were violated by its inability to confront and cross-examine the workers whose initial complaints led to the investigation. We disagree.

When seeking to establish that York intentionally violated the Act, the Division did not rely upon the complaints of unnamed third parties. Had the Division done so, York's argument in this regard would be much more compelling. However, the complaints of the unnamed parties merely triggered the Division's investigation of York. The Division subsequently met its burden of proof by presenting, *inter alia*, the workers' testimony

---

**6.** For example, Keith Nafe testified as follows:
Q. Do you recall what those instructions were?
A. Somewhat. I won't say the exact—mine were to take my time—and I was an operator—to take my time and split it half operator and half laborer which I did; and at the end of the day, I signed my name to agree to that effect.
Q. By splitting your time in this manner, were you accurately reporting your time?
A. No.
Q. Why not?
A. Because I'm an operator. I operated for eight hours.

Notes of Testimony, July 22, 1991, at 19. *See also Id.* at 9, 26–27 and 32–33, for testimony of George Evans, Douglas Kreeger and Gary Hatez, respectively.

**7.** York also maintains that the inspector's testimony that he received verbal and written complaints from various employees constitutes hearsay and, therefore, is insufficient to support a finding that York committed an intentional violation of the Act. However, because the testimony of the four workers supports such a finding, we need not address York's argument.

discussed above. At the evidentiary hearing on July 22, 1991, York's counsel had ample opportunity to cross-examine thoroughly the Division's witnesses. Therefore, we conclude that York was not denied its right to due process.[8]

Accordingly, we affirm the Board's order.

### ORDER

AND NOW, August 7, 1995, we affirm the order of the Pennsylvania Prevailing Wage Appeals Board, dated August 31, 1994.

---

**8.** We also recognize the importance of protecting the identities of workers who seek to enforce the Act's provisions. In *Mitchell v. Roma,* 265 F.2d 633 (3d Cir.1959), the United States Court of Appeals for the Third Circuit similarly acknowledged the purpose of the "informer's privilege" in the context of workers who provided information to the federal Secretary of Labor in their attempts to enforce the Fair Labor Standards Act, Act of June 25, 1938, ch. 676, § 1, 52 Stat. 1060, *as amended,* 29 U.S.C. §§ 201 *et seq.*