MOSAICA EDUCATION, INC., Petitioner,

v.

PENNSYLVANIA PREVAILING WAGE APPEALS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2003.

Decided Nov. 24, 2003.

Mary B. Halfpenny, Philadelphia, for petitioner.

Peter Von Getzie, Harrisburg, for intervenor, Bureau of Labor Law Compliance.

Irwin W. Aronson, Harrisburg, for intervenors, PA State Building & Construction Trades Council, AFL–CIO and the Central PA Building Trades Council.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and LEAVITT, Judge.

## OPINION BY Judge COHN.

We are faced here with a possible statutory conflict between definitions in the Pennsylvania Prevailing Wage Act[1] (Wage Act), which make that act applicable only to "public bodies" using "public funds," and a mandate in Section 1715 A(10)(iii) of the Charter School Law,[2] that requires the Wage Act to be applied to "construction projects and construction-related work" for charter schools, seemingly without regard to the fact that a charter school does not meet the definition of a "public body" under the Wage Act, and that construction projects pertaining to such a school cannot utilize public funds. Both the Department of Labor and Industry's Bureau of Labor Law Compliance and, on appeal after Mosaica Education, Incorporated (Mosaica) filed a grievance, the Prevailing Wage Appeals Board (Board), determined that the provisions of the Wage Act applied, and that Mosaica, which is the management company for the Ronald H. Brown Charter School (School), should have paid the prevailing wage for renovations done to a building ultimately leased by the School. Mosaica has now appealed to this Court.

Three different contracts form the factual background relevant to this case: a management agreement, a lease agreement and a construction contract. Concerning the management agreement, the Board found[3] that Mosaica is a for-profit corporation and is under contract to manage various charter schools, including the one involved in the matter *sub judice.* Under the terms of the management agreement with the School, Mosaica, *inter alia,* provides education services, recruits personnel and manages administrative offices. It even assisted the School in preparing its charter, which was ultimately granted in December 1999.[4] Under the agreement's terms, the School is not a division or part of Mosaica and neither Mosaica nor the School will hold itself out as a partner or agent of the other. (Article III of Management Agreement).

With regard to the lease agreement, the Board found that the School entered into the agreement with EFA Company, LLC (EFA), a Michigan based limited liability company on August 7, 2000. When the School opened in the fall of 2000, construction on the facility was finished. Under the lease, the obligations of the School are solely those of a tenant. Regarding the specific terms of the lease agreement, the Board found that the contract called for EFA to prepare, at its cost, plans for construction and improvements to a building located on Third Street in Harrisburg,

1. Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165–1 through 165–17.

2. Act of March 10, 1949, P.L. 30, added by Section 1 of the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. § 17–1715–A.

3. By stipulation, this matter was decided by the Board based on documentary evidence.

4. The School is a non-profit corporation, as required by the Charter School Law, 24 P.S. § 17–1703–A, and holds a charter in Pennsylvania.

Pennsylvania (Section 4.2 of the Lease Agreement) and that the School was not permitted to "alter, renovate, expand or modify the exterior or interior of the Premises without the prior written consent of [EFA]." (Section 4.5). The School was also prohibited from encumbering the property and was required to indemnify EFA for any damages to the property caused by hazardous materials (Section 4.6). The lease agreement also defined the conditions under which EFA could enter the property (Section 4.8), provided that the School would indemnify EFA for damages caused by the School's use of the property (Section 4.10), and set forth each party's rights to terminate the contract (Article 7). Additionally, Section 10.17 of the lease revealed that Mosaica and EFA enjoy common ownership.

The third contract involved in this matter is the construction contract EFA entered into for the construction work itself. Unfortunately, that contract is not in the record, nor do any relevant dates or other details of that contract, such as the person or persons with whom EFA contracted, appear of record. What is clear is that the School was not a party to the construction contract and has not been obligated to pay for any construction or to repay any construction loans.

Both the management agreement between the School and Mosaica and the lease agreement between the School and EFA were negotiated at arms length and with representation by counsel. Neither EFA nor Mosaica has common ownership or common board members with the School.

The Board, in its adjudication, concluded that the project is subject to the Wage Act, even though it was privately funded and on private property, because the construction was performed solely for the purposes of developing a charter school.[5] In reaching its conclusion, the Board relied on the "clear" language of Section 1715–A(10) of the Charter School Law, 24 P.S. § 17–1715–A(10), noting that that Section does not contain any limiting language indicating that the Section should apply only where the expenditure is of public funds as defined in the Wage Act. The Board also noted that, under Section 1722–A(c) of the Charter School Law, 24 P.S. § 17–1722–A(c), public funds received from the Department of Education or a local school district are not permitted to be used in constructing a charter school. Opining that it could "see no logical reason why the legislature would include this restriction on the utilization of public funds and still require the application of the [Wage Act] unless it intended the [Wage Act] to apply regardless of funding source for the construction project," the Board denied Mosaica's grievance. (Adjudication at p. 11).

■ On appeal, we are asked to decide 1) whether the Charter School Law requires payment of the prevailing wage on the construction project, solely because the property is ultimately leased to a charter school, although the construction was actually paid for entirely with private funds; and 2) whether prevailing wages should have been paid for these renovations.[6] We begin by noting that it appears to be conceded that the construction project was privately funded in its entirety. There

---

5. The Board also noted that the School's by-laws contemplated application of the Wage Act to the School.

6. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or whether

the necessary findings of fact are supported by substantial evidence. *York Excavating Company v. Pennsylvania Prevailing Wage Appeals Board*, 663 A.2d 840, 842 n. 4 (Pa. Cmwlth.1995).

also appears to be an agreement that neither Mosaica nor EFA is a "public body" as defined under the Wage Act. Under Section 2 of that act, a "public body" is the Commonwealth, any of its political subdivisions, any authority created by the General Assembly, and any instrumentality or agency of the Commonwealth. 43 P.S. § 165-2. "Public work" is defined as "construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract *and paid for in whole or in part out of the funds of a public body . . . ." Id.* (emphasis added).[7] The operative provision in Section 5 of the Wage Age dictates that, "Not less than the prevailing minimum wages as determined hereunder shall be paid to all workmen employed on the public work." 43 P.S. § 165-5.

█ Were the statutory provisions in the Wage Act all that existed, we would conclude that Mosaica had no obligation to pay the prevailing wage. However, subsequent to the passage of the Wage Act in 1961, the General Assembly, in 1997, amended the Public School Code and established the Charter School Law. In Section 1702–A of that law, 24 P.S. § 17–1702–A, the legislature expressed its intention to "provide opportunities for teachers, parents, pupils and community members to establish and maintain schools that operate independently from the existing school district structure" in order to accomplish the following goals:

(1) Improve pupil learning.

(2) Increase learning opportunities for all pupils.

(3) Encourage the use of different and innovative teaching methods.

(4) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the school site.

(5) Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system.

(6) Hold the schools established under the act accountable for meeting measurable academic standards and provide the school with a method to establish accountability systems.

Keeping in mind that the intent of the Charter School Law is to improve Pennsylvania's public education system, we now turn to the provision that forms the basis of the present dispute. Section 1715–A(10), 24 P.S. § 17–1715–A(10), provides that "Boards of trustees and contractors of charter schools shall be subject to the following statutory requirements governing construction projects and construction-related ·work . . . ." There follows, a list of statutory provisions pertaining to such matters as public bidding of contracts, bonding requirements for public construction projects, procurement of separate specifications for certain types of repairs, and a prohibition against the use of foreign steel in public buildings. The statutory reference to the Wage Act is also found here. While some of the references specify that only certain portions of particular acts apply, there is no such limitation with regard to the Wage Act and, therefore, the *entire* Wage Act is incorporated by reference.[8]

---

7. The definition also requires that the estimated cost of the total project be in excess of $25,000.

8. The critical language concerning the Wage Act reads as follows:

Boards of trustees and contractors of charter schools shall be subject to the following statutory requirements governing construction projects and construction-related work . . .

In examining this list of citations, we are struck by the fact that the General Assembly adopted many provisions of the existing statutory laws governing public works construction projects by mandating, with regard to charter school construction projects, compliance with previously implemented legislation that is favorable to laborers. In determining why the Legislature mandated compliance with certain public works legislation, we refer to sections of the Charter School Law that establish charter schools as a type of public school. Section 1703–A of the Charter School Law, 24 P.S. § 17–1703–A provides, " 'Charter school' shall mean an independent *public school* established and operated under a charter from the local board of school directors and in which students are enrolled or attend. A charter school must be organized as a public, nonprofit corporation. Charters may not be granted to any for-profit entity." (Emphasis added.) In addition, in Section 1725–A(a)(1) of the Charter School Law, 24 P.S. § 17–1725–A(a)(1), the General Assembly directs, "There shall be no tuition charge for a resident or nonresident student attending a charter school." [9] This "tuition free concept" is, of course, present in the public school system. Other similarities between a charter school and traditional public schools can be found in Section 1726–A of the Charter School Law, 24 P.S. § 17–1726–A (pertaining to providing free bus transportation to charter school students within certain geographic limitations) and Section 1727–A of the Charter School Law, 24 P.S. § 17–1727–A (providing for tort liability consistent with that of public school employees and districts).

Keeping in mind the purpose of the Charter School Law, and recognizing that the provisions in Section 1715–A(10) of that law, do not appear to address the concerns the General Assembly had with Pennsylvania's public education system, we conclude that those provisions are there because the legislature, in elsewhere addressing the shortcomings of the state's public education system, did not want to do so at the expense of the state's labor force. Indeed, what is absent from the Charter School Law is any indication whatsoever that the General Assembly was dissatisfied with the labor costs for construction of school facilities. Thus, we conclude that, in enacting Section 1715–A(10), it consciously sought to protect laborers, while addressing an issue that did not relate to them, but whose remedy could have impacted adversely upon them.

We, therefore, hold that it was the General Assembly's intent to treat charter schools *the same as other public schools* for purposes of construction projects. It did so by incorporating the various statutory references to trade-related legislation in Section 1715–A(10), 24 P.S. § 17–1715–A(10).[10] This conclusion, that what is mandated is equal treatment, also addresses Mosaica's concern that **all** of the prerequisites for application of the Wage Act are being eliminated. Section 1715–A, 24 P.S. § 17–1715–A, clearly obviates the requirement that the funds for construction connected with charter schools be spent by a

---

(iii) *the Act* of August 15, 1961 (P.L. 987 No. 442), known as the "Pennsylvania Prevailing Wage Act."
(Emphasis added.)

**9.** *Accord West Chester Area School District v. Collegium Charter School,* 760 A.2d 452, 454 n. 2 (Pa.Cmwlth.2000) (noting that charter schools are funded with public money), *affirmed,* 571 Pa. 503, 812 A.2d 1172 (2002).

**10.** We note that it would not have been necessary to extend the Wage Act to cover Charter Schools if their construction came within the definition of public work.

"public body" on a "public work"; however, we see nothing in that Section, or elsewhere in the Charter School Law, that would obviate any other prerequisite (such as the requirement that expenditures for construction total more than $25,000).[11] Accordingly, we conclude that the Board correctly determined that the provisions of the Wage Act apply to charter school construction.

We must now address Mosaica's argument that Section 1715–A(10)(iii), 24 P.S. § 17–1715–A(10)(iii), does not apply to this case because that provision subjects only the *boards of trustees* and *contractors* of charter schools to the requirements of the Wage Act and, here, the board of trustees did not contract for the renovations. The Charter School Law does specify that it is the board of trustees and the contractors of a charter school who are subject to the Wage Act. However, this point was not one addressed below. Thus, we must remand this matter for additional proceedings.

Mosaica also points out that there has been no determination that the expenditures here exceeded the $25,000 statutory minimum appearing in the Wage Act. This factor is yet another reason to remand this case for a further hearing.

Additionally, the Department of Labor and Industry asserts in its brief that the School, Mosaica and EFA enjoy a "strong relationship," and further asserts that EFA is an "alter ego" for the School. Thus, it contends that prevailing wages must be paid. Again, however, a record needs to be developed on the relationship among these three entities.[12]

On remand the Board is ordered to (1) apply the same criteria in deciding this case as it would to a construction project involving a traditional public school, (2) address the argument that the board of trustees did not enter into the construction contract, as well as to consider whether such a defense is consistent with its interpretation of the Act, (3) address the question of whether there are close ties among the School, Mosaica and EFA such as would justify the imposition of the prevailing wage or the piercing of the corporate veil (4) if necessary, address whether the expenditures here exceeded $25,000 and, (5) take any additional evidence and make any additional findings that it deems necessary for proper resolution of this case.

### ORDER

**NOW,** November 24, 2003, the order of the Pennsylvania Prevailing Wage Appeals Board in the above-captioned matter is hereby affirmed to the extent it held that the Prevailing Wage Act is applicable to charter schools, and otherwise vacated and this case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

11. *Pennsylvania State Building & Construction Trades Council v. Prevailing Wage Appeals Board,* 570 Pa. 96, 116 n. 5, 808 A.2d 881, 893 n. 5 (2002) ("[I]n ... instances in which the General Assembly has undertaken to enlarge prevailing wage coverage, it has done so by express language. *See, e.g.,* 24 P.S. § 17–1715–A(10)(iii).") (Saylor, J. dissenting, and joined by Castille, J.).

12. As noted earlier, the construction contract itself is not even part of the record before us and, on remand, it can be admitted into the record.