**WEST READING TAVERN,
INC., Petitioner,**

v.

**PENNSYLVANIA LIQUOR CONTROL
BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 1997.

Decided April 9, 1998.

Scott E. Lash, Wyomissing, for petitioner.

Robin Coward, Conshohocken, for respondent.

Ronald P. Kalyan, Jr., Reading, for intervenor, Joe's Bistro 614, Inc.

Before PELLEGRINI and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

West Reading Tavern, Inc. (Tavern) appeals from an order of the Pennsylvania Liquor Control Board (Board) approving an application for a new restaurant liquor license filed by Joe's Bistro 614, Inc. (Bistro) under Section 461(b) of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4–461(b), which authorizes the Board "to increase the number of licenses in any municipality which in the opinion of the [B]oard is located within a resort area."

Bistro is located at 614 Penn Avenue in the Borough of West Reading (Borough), Berks County, less than three blocks from the large outlet complex, known as the V.F. Factory Outlet, which attracts approximately ten million visitors a year. On March 15, 1994, Bistro filed an application for a new restaurant liquor license (first application) under the resort area exception, as a prospective operator of a restaurant. At that time, six restaurant liquor licenses were in effect in the Borough, which exceeded the quota for the Borough, one license. Tavern, an establishment with a restaurant liquor license located 60 feet from Bistro, protested Bistro's application. Bistro thereafter opened for business in July 1994.

After a hearing held on August 24, 1994, the hearing examiner recommended that Bis-

tro's application be denied. The Board accepted the hearing examiner's recommendation and denied the application, concluding, *inter alia*, that Bistro is not located in a resort area and that there was no need for an additional restaurant liquor license in the Borough. Bistro appealed the Board's decision to the trial court, but later withdrew the appeal.

On January 23, 1996, Bistro filed a second application for a new restaurant liquor license with the Board. Tavern again protested Bistro's application. Following a hearing held on June 5, 1996, the hearing examiner again recommended that the application be denied. The Board this time rejected the hearing examiner's recommendation and approved Bistro's application. The Board concluded that Bistro is located in a resort area, that there is a need for an additional restaurant liquor license in the Borough, and that granting Bistro a liquor license would not adversely affect the health, welfare, peace and morals of the neighborhood within 500 feet of Bistro under Section 404 of the Liquor Code, 47 P.S. § 4–404. Tavern appealed the Board's decision approving the second application.

Tavern initially filed the appeal to the trial court. Bistro filed preliminary objections in the nature of a motion to dismiss or quash the appeal, contending that Tavern lacked standing to appeal the Board's decision under Section 464 of the Liquor Code, 47 P.S. § 4–464. Under Section 464, only a "church, hospital, charitable institution, school or public playground located within three hundred feet of the premises applied for, aggrieved by the action of the board in *granting* the issuance of any … license …, may take an appeal … *to the court of common pleas of the county* in which the premises or permit applied for is located." (Emphasis added.) Therefore, Tavern, a holder of a restaurant liquor license, does not have standing to appeal the Board's decision to grant Bistro a license to the trial court under the Liquor Code.

However, one, who protested the application before the Board but lacks standing to appeal to the trial court under the Liquor

Code, may still appeal directly to this Court pursuant to Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702, if he or she is aggrieved by and have direct interest in the Board's decision. *Maritime Management, Inc. v. Pennsylvania Liquor Control Board,* 531 Pa. 95, 611 A.2d 202 (1992); *Application of El Rancho Grande, Inc.,* 496 Pa. 496, 437 A.2d 1150 (1981); *Tacony Civic Ass'n v. Pennsylvania Liquor Control Board,* 668 A.2d 584 (Pa.Cmwlth.1995), *appeal denied sub nom. Tacony Civic Ass'n v. Foodarama, Inc.,* 545 Pa. 666, 681 A.2d 180 (1996). In this matter, the trial court properly transferred Tavern's appeal to this Court.

This Court's scope of review of an order of an administrative agency is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *York Excavating Co. v. Pennsylvania Prevailing Wage Appeals Board,* 663 A.2d 840 (Pa.Cmwlth.1995).

■ Tavern contends that Bistro's second application was barred by the doctrines of res judicata and collateral estoppel because the Board had already determined, after considering Bistro's first application, that (1) Bistro is located within 200 feet of Tavern and within 300 feet of a church; (2) it is not located within a resort area; (3) there was no need for an additional restaurant liquor license in the Borough; and (4) approval of the application would adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of Bistro. Tavern asserts that Bistro's second application is nothing more than an attempt to resubmit its abandoned appeal from the Board's first decision.

The Liquor Code and the regulations promulgated thereunder do not limit the number of applications permitted to be filed for the same premises. In *In re Haase,* 184 Pa.Super. 356, 134 A.2d 682 (1957), the Superior Court held that the Board's previous denial of three applications for a new restaurant liquor license for the same premises within the past three years did not bar the fourth application under the doctrine of res judicata

nor establish the law of the case. The Court reasoned:

> The question of conclusiveness and finality of any administrative determination involves many factors, including the terms of the statute, the substance and effect of the order.... [T]he doctrine of res judicata is not applicable to this situation. The Liquor Code makes no restriction regarding the number of times a person may apply for a transfer, despite the fact that it fully and in great detail encompasses the field of liquor licensing and regulation. Had the legislature intended that there be a limit on the applications, so basic a matter, it would have so provided. (Citations omitted.)

*Accord Appeal of 425–429, Inc.,* 179 Pa.Super. 235, 116 A.2d 79 (1955). Hence, the Board's denial of the first application did not bar Bistro from filing another application to establish its entitlement to a liquor license.

■ Although the applicant may file a new application after the Board's previous denial of the applications, the Board's reversal of its earlier conclusions on the identical issues and facts in a subsequent decision may amount to an abuse of discretion, if the Board fails to state any valid reason for its action. *In re Restaurant Liquor License of De Angelis,* 183 Pa.Super. 388, 133 A.2d 266 (1957).

In *Appeal of Betula Methodist Church,* 169 Pa.Super. 506, 83 A.2d 398 (1951), the Board denied the application for a liquor license on the sole ground that the applicant's premises were located within 300 feet of a church. The applicant did not appeal the Board's denial. The applicant later filed the second application but did not present any additional evidence to support its application. The Superior Court concluded that the Board abused its discretion in approving the second application without making any factual findings.

■ In this matter, when the first application was filed, Bistro was not open for business. At the hearing held on the second application almost two years after the first hearing, Bistro presented additional evidence based on its actual operation of the restaurant, including the clientele and the nature of

its business, to establish its entitlement to a liquor license under the resort area exception. Because the Board approved the second application based on new findings of fact and conclusions of law after considering all the evidence presented at the second hearing, the Board did not abuse its discretion in this matter.

■ As to the merits of the appeal, Bistro is located within 200 feet of Tavern, the holder of an existing restaurant liquor license, and within 300 feet of St. James Church, as the Board found.[1] Under Section 404 of the Liquor Code, 47 P.S. § 4–404, however, the Board may, "in its discretion, grant" a new liquor license, even where the premises proposed to be licensed is within 200 feet of any other licensed premises or within 300 feet of a church. The Board in this matter exercised its discretion and decided to approve the application although Bistro is within the location restricted by Section 404. It is well established that an administrative agency's exercise of its discretion may not be disturbed on appeal. *Norfolk & Western Ry. Co. v. Pennsylvania Public Utility Commission,* 489 Pa. 109, 413 A.2d 1037 (1980). Further, Tavern on appeal does not challenge the Board's finding that granting Bistro a license would not adversely affect the health, welfare, peace and morals of the neighborhood within 500 feet, and the record does not contain any evidence that would support a contrary finding.

■ An applicant seeking a liquor license under the resort area exception set forth in Section 461(b) of the Liquor Code has the burden of establishing that (1) its premises are located within a resort area and (2) there is an actual need for an additional license in the area. *In re Brandywine Valley Inn, Inc.,* 53 Pa.Cmwlth. 203, 417 A.2d 823 (1980).

■ Although the Liquor Code does not define the term "resort area," it has been construed to require the applicant to demonstrate a seasonal influx of transients which causes the population of the area to swell so that existing liquor licenses cannot adequate-

ly meet the needs of the area. *Pennsylvania Liquor Control Board v. Ripley,* 107 Pa. Cmwlth. 425, 529 A.2d 39 (1987). In addition, the facilities in the area must be used primarily by the temporary transients or tourists and not by area residents. *In re Aiello,* 41 Pa.Cmwlth. 345, 399 A.2d 154 (1979). The Board has wide discretion in determining whether an area is located in a resort area. *Pennsylvania Liquor Control Board v. Myers,* 62 Pa.Cmwlth. 570, 437 A.2d 483 (1981), *rev'd on other grounds,* 499 Pa. 76, 451 A.2d 1000 (1982).

■ In this matter, the evidence presented by Bistro amply demonstrates that Bistro is located in a close proximity to the area attracting the large influx of seasonal tourists. The Reading and Berks County Visitor's Bureau advertises the area as "the Outlet Capital of the World" throughout the east coast of the United States. Bistro is located within three blocks from the V.F. Factory Outlet, which attracts ten million visitors a year. Up to 85% of all the visitors come from over 100 miles away. The peak season for tourists are from August to December, and approximately 60 to 70% of tourists visit the area during that period.

■ Tavern contends that shopping is a common activity throughout Pennsylvania and that the appellate courts have never classified a shopping area as a resort area under Section 461(b). However, Tavern does not dispute that the area attracts ten million visitors throughout a year, not just for a brief period for certain activities, such as summer festivals involved in *Pennsylvania Liquor Control Board v. New Greensburg Aerie Fraternal Order of Eagles # 3920, Inc.,* 82 Pa.Cmwlth. 272, 476 A.2d 985 (1984), a case relied by Tavern. Moreover, a classification of a resort area depends not on the specific nature of the activities in the area, but on the large influx of tourists to the area requiring an additional liquor license to accommodate the tourists' needs. *Ripley.* The record in this matter supports the Board's conclusion that Bistro is within a resort area under Section 461(b).

1. St. James Church notified the Board in August 1994 that it would not protest Bistro's application.

The factors to be considered in determining the actual need for an additional liquor license are: (1) the need of persons who will use the facility; (2) number and types of establishments already present in the area; and, (3) whether the clientele to be served is different from that served by the existing business. *Pennsylvania Liquor Control Board v. Spring Gulch, Inc.,* 87 Pa. Cmwlth. 395, 487 A.2d 472 (1985). The term "actual need" should be given a broad construction to mean a substantial need in relation to the pleasure, convenience and general welfare of the persons who would make use of the facility. *Appeal of Pesante,* 82 Pa. Cmwlth. 242, 476 A.2d 474 (1984).

Bistro served only lunch when it opened in July 1994. It now serves both lunch and dinner. It is open on Tuesday through Saturday and can accommodate up to forty-five patrons. The owner of Bistro testified that 70 to 80% of its patrons are from outside of the Reading area, and that many of them are out-of-state tourists. Tavern's president estimated, on the other hand, that only 10% of his patrons are out-of-town shoppers. He further stated that he did not notice that his business had been affected by the operation of Bistro.

The Board found that Bistro is an upscale restaurant which appeals to patrons who have gourmet appetites. Its menu is unique, compared to other restaurants in the area, in that its menu includes 250 exotic wild mushrooms and antelopes and black bears. Bistro would also provide large selections of wine. Tavern, on the other hand, caters mainly to local patrons. The nature of Bistro's operation is also different from other establishments in the area: Chef Allen, the large family-oriented restaurant; Mom Chaffe's Cellarette, the Italian restaurant not open for lunch; Third and Spruce Caf, the sports bar restaurant; and, GNA Pizza serving only pizzas and sandwiches. As this Court held in *Appeal of Pesante,* the applicant can establish the actual need for a liquor license by demonstrating that it can add a service where and when the present licensees cannot.

The evidence of Bistro's continued success, the unique nature of its operation and the disparate nature of its patrons supports the Board's finding that there is an actual need for a new restaurant liquor license in the area.

Since the record amply supports the Board's determinations that Bistro is located within a resort area and that there is an actual need for a new restaurant liquor license, the order of the Board approving Bistro's application under Section 461(b) of the Liquor Code is affirmed.

### ORDER

AND NOW, this 9th day of April, 1998, the order of the Pennsylvania Liquor Control Board in the above-captioned matter is affirmed.

LEADBETTER, J., did not participate in the decision in this case.