PEREUS FOOD EMPORIUM, INC.
t/a Villa Capri Pizza and
Family Restaurant,

v.

PENNSYLVANIA LIQUOR CONTROL
BOARD, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 9, 2000.

Decided March 14, 2001.

Michael L. Plumley, Harrisburg, for appellant.

Scott M. Amori, Stroudsburg, for appellee.

Before PELLEGRINI, FLAHERTY, Judges and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.[1]

The Pennsylvania Liquor Control Board (Board) appeals from an order of the Court of Common Pleas of Monroe County (trial court) reversing the order of the Board and finding that Pereus Food Emporium, Inc. (Applicant) was entitled to a liquor license under the resort area exception contained in Section 461 of the Liquor Code.[2]

Applicant operates Villa Capri Pizza and Family Restaurant (Villa Capri), an Italian restaurant located in Middle Smithfield Township, Monroe County (Township). The restaurant is located in a small shopping mall adjacent to the Pocono Bazaar Flea Market and in close proximity to the Delaware Water Gap National Recreation Area. The Township had previously been recognized by the Board as a resort area. The quota for liquor licenses in the Township is one, with nine restaurant licenses

and one retail dispenser license in effect that are counted against the quota. There are also ten hotel liquor licenses and one catering club liquor license in effect that are not counted against the quota.

On May 19, 1999, Applicant filed an application for a new retail liquor license under the "resort area" provision contained in Section 461(b) of the Liquor Code. Based on its review of the record made before a Board hearing examiner, the Board refused the application for a new restaurant liquor license concluding that although the proposed licensed premises was located in a resort area, Applicant failed to establish that an actual need and necessity for the requested license existed. In doing so, the Board noted that there were already ten times more licenses in effect in the Township than were allowed under the legislatively created quota system,[3] and that even though two of those licenses were being held in safekeeping by the Board because their owners intended to sell them, Applicant did not make any attempt to purchase either of the existing licenses. In addition, the Board also noted that because there was another licensed establishment within 200 feet of the proposed licensed premises, it had an absolute right to refuse the application pursuant to Section 404 of the Liquor Code.[4] Applicant then appealed to the trial court which conducted a *de novo* hearing.

Before the trial court, the testimony before the Board was introduced and additional testimony was taken. In support of the application, Hercules Foskolos (Foskolos), owner and sole shareholder of Applicant, testified as to the purported unique

---

1. This case was reassigned to the author on January 3, 2001.

2. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–461(b). That section provides, "the board shall have the power to increase the number of licenses in any such municipality which in the opinion of the board is located in a resort area."

3. Pursuant to Section 461(a) of the Liquor Code, 47 P.S. § 4–461(a), retail liquor licens-

es are limited to one for every 3,000 inhabitants in that municipality.

4. 47 P.S. § 4–404. That section provides, in relevant part, "in the case of any new license or the transfer of any license to a new location the board may, in its discretion, grant or refuse such new license or transfer ... if such new license or transfer is applied for a place which is within two hundred feet of any other premises which is licensed by the board[.]"

nature of Villa Capri. He stated that the restaurant served breakfast, lunch and dinner offering an extensive Italian menu, including pizza, sandwiches, salads, soups and appetizers, as well as a variety of specialty dinner entrees. While admitting that there were several pizza and Italian food restaurants within five miles of his restaurant, Foskolos stated that unlike any of those restaurants, everything on the menu at Villa Capri was prepared fresh daily. He also testified that the restaurant had a unique 1950's theme and hosted a cruiser night every Thursday evening with a disc jockey playing music outside. He stated that the 1950's theme attracted a large number of car collector groups and was the official club of the Monroe County Cruisers. He also stated that he had lost customers because he was unable to sell liquor and would expand his menu even further if he were granted a license.

Also in support of its application, Applicant presented the expert testimony of Thomas J. Shepstone (Shepstone), a planning consultant, who testified that the restaurant offered a unique combination of services with respect to the food preparation, the theme of the restaurant and the tailoring of its services to the needs of the adjacent resort attraction. He also testified that since 1985, the number of licenses serving tourists in the Township has remained stable while the number of tourists to the area had increased dramatically. Shepstone stated that based on his findings that the adjacent flea market attracted between 20,000 and 30,000 visitors per weekend, that there was only one other licensed restaurant in the immediate vicinity of the flea market, and that there had been a dramatic increase in the Township population as well as traffic growth in the area, he believed that there was a necessity for an additional license. Moreover, he stated that the Villa Capri's distinctive

menu with foods prepared fresh daily and its distinctive theme, which catered not only to flea market visitors but also to cruiser clubs, offered a unique service to the area, and, therefore, granting a liquor license to Applicant would be appropriate. As to the two existing licenses not presently being used, Shepstone stated that he did not know whether either of the licenses were for sale.

In opposition to the application, Frances Hedglin, a licensing investigator for the Board's Bureau of Licensing, testified that there were eight restaurants which had restaurant liquor licenses and offered the same or similar menus as the Villa Capri located within five miles of the restaurant. Although all eight of the restaurants were not within the Township, she stated that they provided the same general services to tourists in the area.

Finding that there existed an extensive development of the area, an increase in the number of visitors to the Township who required food and drink, and that the restaurant liquor licenses in the Township had increased by only one since 1985 despite an increase in tourist population, the trial court concluded that an actual need for an additional liquor license existed. Moreover, finding that Applicant would be one of only two licensed establishments in the area of the Pocono Bazaar Flea Market which attracted approximately 25,000 visitors each weekend, that it was able to offer flea market attendees the convenience of obtaining meals without moving their cars or crossing a busy highway, that it offered a unique menu of Italian food prepared fresh daily and catered to a unique clientele, the cruisers, through its special events and décor, the trial court granted its restaurant liquor license application. The Board then filed the instant appeal.[5]

---

5. Where the trial court has conducted its own evidentiary hearing and issued its own findings of fact, our scope of review is to determine whether there is substantial evidence to support the court's findings of fact, and whether the court abused its discretion or committed an error of law. *McGonigel's Inc. v. Pennsylvania Liquor Control Board,* 663 A.2d 890 (Pa.Cmwlth.1995).

The Board contends that the trial court erred in granting Applicant a resort area liquor license because it did not establish that there was an actual need for an additional restaurant liquor license in the Township. Specifically, the Board argues that there are eight restaurants with liquor licenses that offer Italian food and/or pizza within five miles of the Villa Capri.

■ An applicant seeking a liquor license under the resort area exception to the statutory quota must establish (1) that its premises are located within a resort area and (2) that there is an actual need for an additional license in the area. *Chadds Ford Tavern v. Pennsylvania Liquor Control Board*, 736 A.2d 70 (Pa. Cmwlth.1999).[6] Whether an actual need or necessity for an additional license exists is determined by considering (1) the need of persons who will use the facility; (2) the number and types of establishments already present; and (3) whether the clientele to be served is different from that served by existing licensees. *Id.* Actual need or necessity for a liquor license is broadly construed to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who would use the facility of the licensee, i.e., whether the facility can add a service that present licensees cannot. *Id.* In determining whether an actual need exists for an additional license, not only are the restaurants in the municipality against which the Applicant is seeking a waiver from quota taken into consideration, but also other licensed liquor establishments in the area are considered as well. *In Re Giannilli v. Pennsylvania Liquor Control Board*, 82 Pa.Cmwlth. 142, 474 A.2d 738 (1984).

■ In this case, Applicant operates a restaurant specializing in Italian cuisine, a need that is filled by eight other restaurants serving Italian cuisine located within a five-mile radius of Applicant's restaurant, all of which are licensed by the Board to sell liquor which serve the same general clientele as Applicant seeks to service. Just because Applicant's menu items are prepared fresh daily does not distinguish it from the other restaurants which serve Italian cuisine such that it provides a different service nor does its 1950's décor and theme, including its Thursday night "cruises," distinguish it such that it serves a different clientele. If décor and theme were a basis for distinguishing one restaurant from another, then any restaurant that came up with a different concept would be entitled to a resort license no matter how many liquor licenses were issued. Its main purpose, like the already licensed restaurants in the area, is to serve Italian food. Moreover, if there was a demonstrated need for more restaurants, Italian or otherwise, the two retail licenses would not be in safekeeping and already would have been sold.[7]

Accordingly, because Applicant provides the same general service to the same general clientele as other local restaurants, there is no actual need or necessity for an additional liquor license, and the decision of the trial court is reversed.[8]

### ORDER

AND NOW, this *14th* day of *March,* 2001, the order of the Court of Common

6. Both parties agree that the Township is located in a resort area.

7. While applicants in resort areas attempt to distinguish themselves by cuisine and theme, once a resort license is granted, an applicant is not bound to offer that cuisine and theme if a license is granted. Perhaps a better standard for the issuance of resort licenses is whether there are more restaurants with liquor licensees needed in the area to serve the population, then let the market determine what type, theme and price point each should have.

8. The Board also contends that the trial court erred in granting Applicant's restaurant liquor license application because Applicant's restaurant was located within 200 feet of another liquor licensee. Because we hold that Applicant failed to establish an actual necessity for a new restaurant liquor license, we need not address that issue.

Pleas of Monroe County, dated June 9, 2000, is reversed.

JIULIANTE, Senior Judge, Dissenting.

I respectfully dissent. I believe that the evidence of record supports the trial court's determination that Applicant met the "actual need" requirements as set forth in *West Reading Tavern v. Pennsylvania Liquor Control Board*, 710 A.2d 648 (Pa.Cmwlth.1998) and *Chadds Ford Tavern, Inc. v. Pennsylvania Liquor Control Board*, 736 A.2d 70 (Pa.Cmwlth.1999). With regard to the unique services provided by Villa Capri, the trial court made the following findings:

7. The Petitioner's premises is the only establishment in Middle Smithfield Township that cooks its bread and sauces from all fresh ingredients on a daily basis. (N.T. 5/23/2000 at 8–9, 23–24, 48). Petitioner's establishment offers specialty Italian entrees nightly. (*Id.* at 7, 48). Further, it is the only Italian cuisine facility located near the Pocono Bazaar Flea Market, which attracts approximately 25,000 visitors each weekend. (N.T. 18, 47). If granted the requested liquor license, Petitioner would add additional specialty items to its menu. (*Id.* at 29–30). In addition, Petitioner's premises is one of only two licensed establishments in the area that offers breakfast. (N.T. 5/23/2000 at 22, 47).

8. The Petitioner's establishment serves a different clientele than existing facilities in the area because it specifically caters to tourists known as "cruisers" who are interested in old cars and the 1950s hot rod themes. (N.T. 5/23/2000 at 24–26, 48; Pet'r's Ex. 3 at 5–3, 6–1). Petitioner holds a special event every Thursday night designed to attract various cruiser clubs for entertainment and display of their cars. (N.T. 5/23/2000 at 24–26, 42–43, 48). The décor of Petitioner's establishment is consistent with this theme. (*Id.*)

9. The Petitioner's premises is ideally situated along Route 209 to provide service to families attending the Pocono Bazaar Flea Market, as well as to families travelling to and from the many recreational attractions and second home developments in the Township. (See Pet'r's Ex. 3 at 3–1 to 3–8).

Trial Court's Opinion, pp. 2–3.

Hercules Foskolos, Applicant's owner and sole shareholder, testified that what really distinguishes the Villa Capri is that it has a late 50's/early 60's hot rod theme that appeals to car collector groups from various areas. These car collectors come from outside areas such as Scranton, New York City, and Philadelphia and park their old cars outside the restaurant. On Thursday nights, the restaurant holds a "cruise," and has a disc jockey playing 50's and 60's music outside.

Foskolos further testified that the Villa Capri is the only restaurant in the area with a hot rod theme and that some of the area hotels try to inform their guests about Villa Capri's Thursday cruise nights. Although the Majority downplays décor as a basis for distinguishing one restaurant from another, I believe that it clearly relates to the three requirements for establishing actual need: "(1) the need of persons who will use the facility; (2) number and types of establishments already in the area; and, (3) whether the clientele to be served is different from that served by the existing business." *West Reading Tavern,* 710 A.2d at 653.[1]

---

1. With regard to the existing liquor licenses being held by the Board, the trial court found that they were not for sale by themselves, but could only be obtained if the establishments were also purchased.

To reiterate, I believe that the trial court's essential findings of fact are supported by substantial evidence and that the court correctly determined that Applicant met the "actual need" requirements for a resort area liquor license. Therefore, I would affirm.