# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAC Club of Western PA | : | |
| | : | |
| v. | : | No. 255 C.D. 2017 |
| | : | Argued: November 13, 2017 |
| Pennsylvania Liquor Control Board, | : | |
| Appellant | : | |

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                        HONORABLE PATRICIA A. McCULLOUGH, Judge
                        HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                            FILED:  January 3, 2018

The Pennsylvania Liquor Control Board (Board) appeals from the Order of the Court of Common Pleas of Allegheny County (common pleas), which overturned the Board's denial of the double transfer application (Application) of PAC Club of Western PA (Club) for Catering Club License CC-2293 (License) and directed that the Application be approved.  On appeal, the Board argues that common pleas erred because, *inter alia*, the transfer would violate Section 404(a) of the Liquor Code[1] by giving Mr. Sparrow an unlawful pecuniary interest in the License.  Because Club bore the burden of proving that it satisfied the requirements of the Liquor Code for a double transfer, and it did not establish that Mr. Sparrow would not have an unlawful pecuniary interest, we reverse.

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-404(a).

Founded in 1998, Club exists "[t]o engage in social activities for the purpose of promoting community goals and good fellowship among the members and in accordance therewith to acquire a clubhouse with the future goal of acquiring a club liquor license." (Reproduced Record (R.R.) at 13a.) In the past, Club has made multiple attempts to acquire a liquor license. Finally, in 2010, the Board approved Club for a club liquor license for a location in the Southside area of the City of Pittsburgh (City) for a term of December 8, 2010, through April 1, 2014. However, Club never opened at that location because it could not obtain an occupancy permit and the license expired due to non-activity. On August 30, 2014, Club entered into a purchase and escrow agreement with the Southside Caravan Club (SCC) to purchase the License at issue here. The License would be transferred from SCC's location at 1113-15 East Carson Street, Pittsburgh, to Club's location at 522 Rosedale Street, Pittsburgh (Premises).

Club filed its Application with the Board on November 18, 2014. The Bureau of Licensing (Licensing) notified Club that a hearing would be held to take testimony and evidence regarding 12 objections to the Application.[2] (R.R. at 269a-71a.) Numerous residents from within 500 feet of Club's Premises filed protests to the Application. The following evidence was adduced at the hearing.

---

[2] The objections were: whether Club met the definition of "club" under the Liquor Code (Objection 1); whether Club had a primary interest or activity to which the sale of liquor and malt beverages would be secondary (Objection 2); whether the operation of Club's business would inure to the benefits of the entire membership, rather than to benefit individual members or officers (Objection 3); whether Mr. Sparrow would have an unlawful pecuniary interest in the License (Objection 4); Club's failure to submit certain required documents and information with the Application (Objections 5-9); whether certain entities and individuals would be directly aggrieved such that they could intervene on the Application (Objection 10); whether certain individuals reside within 500 feet of the proposed premises such that they would be valid protestants to the Application or would be directly aggrieved such that they could be intervenors (Objection 11); and whether the approval of the License would affect the health, welfare, peace and morals of the inhabitants of the neighborhood within 500 feet of the proposed licensed premises (Objection 12).

A Board Licensing Analyst (Analyst) testified regarding the results of the investigation on the Application. (R.R. at 6a-57a.) The area surrounding the Premises is 90% residential and 10% commercial. There is no off-street parking, so Club would have to rely on on-street parking. Club would be open from 4:00 p.m. to 3:00 a.m., seven days a week, and would provide DJ entertainment on the weekends. Club submitted its bylaws, articles of incorporation, meeting minutes for between October 2013 and January 2015, a roster of its membership, a real estate sales agreement, a lease, and a purchase agreement for a prior license (Prior Purchase Agreement).[3] Club has a board of directors and a membership of 33, and annually charges dues of $25 and $50, respectively, for its active members (voting) and social members (non-voting). The Prior Purchase Agreement between Club and Mr. Sparrow related to one of Club's prior attempts to acquire a different liquor license. According to the terms, Club would sell its charter and liquor license to Mr. Sparrow for $35,000, $17,500 at the signing of the agreement and $17,500 in monthly installments of $1,000 beginning 30 days after final approval of the transfer of the license to Club. (*Id.* at 284a.) To purchase this License, Club is borrowing $18,000 from Mr. Sparrow. Mr. Sparrow, who owns the Premises and is Club's landlord, was not a Club member at the beginning of the application process, but became a member in October 2014 and Club's President in January 2015. As of January 2015, Club's officers were: Mr. Sparrow, President; Karen Sparrow, Secretary; Charles Sparrow, Treasurer; Andrew Lamboley, Executive Director; and Thomas Barnes, Manager Steward. (R.R. at 38a.)

Club's Manager Steward, Mr. Barnes, testified on Club's behalf. (*Id.* at 227a-60a.) Club hoped to get a couple of hundred members once it opens, but anticipated

---

[3] Club objected to the admission of the Prior Purchase Agreement on relevance grounds, but the objection was overruled.

3

having an occupancy permit for 50 or 60 persons. The DJ would play on Friday and Saturday nights from 8:00 p.m. to 1:30 a.m. Mr. Barnes, who has worked in licensed establishments for 40 years, has been involved in Club's prior 3 or 4 attempts to obtain a license since 2009. He has never been involved in an establishment that had drug activity problems and would take steps to avoid, as much as possible, additional noise and litter. Mr. Barnes drafted the Prior Purchase Agreement between Club and Mr. Sparrow, which never went into effect because no license was granted. No similar agreement has been made for the purchase of this License. Because Club was unable to obtain funding from a bank, Mr. Sparrow was loaning Club $18,000 to acquire the License. Club will pay Mr. Sparrow back, but the terms of repayment would not be agreed upon unless the License was approved. (*Id.* at 231a-33a.) Club will provide Mr. Sparrow a security interest in the License in exchange for the loan. Club has a lease with Mr. Sparrow for $500 to $750 a month, but Mr. Barnes was unsure of the exact amount of rent or the length of the lease. Mr. Barnes stated that no individuals will profit from Club's business. (*Id.* at 237a-38a.)

The City's Police Department (Bureau of Police) sought to intervene.[4] Detective Brian Radocaj, the coordinator of the Nuisance Bar Taskforce, testified about the impact liquor licensed establishments bring to a neighborhood and that adding a licensed entity that provides live entertainment on the weekends would strain police resources. (*Id.* at 93a-99a.) Detective Radocaj acknowledged that his testimony "would assume that there were issues with the operator." (*Id.* at 98a.) Rosedale Block Cluster, Inc. (Rosedale), a community organization that owns

---

[4] A representative of the area's City Councilman, who sought to intervene, testified on the Councilman's behalf, describing, in relevant part, the efforts made and money spent by the City to redevelop the area. (R.R. at 67a-90a.) Similarly, a representative for the area's state representative stated that the representative supported the opposition to Club's Application. (*Id.* at 221a-22a.) Neither were granted intervenor status.

4

multiple parcels and operates a community center in the area, sought to intervene, and its executive director, Dianne Swan (also a resident), testified on its behalf. She described the efforts made by the community in the past 20 years to improve the neighborhood, the non-profit entities that have been enticed to the redeveloped community, a potential increase in existing problems with prostitution and parking, and the risk that the positive changes to the community would be disrupted by the proposed licensed premises. (*Id.* at 99a-130a.)

Numerous residents who live within 500 feet of the Premises testified in opposition, citing concerns about: adding potential violence and crime to the community where they have worked hard to reduce violence and crime by 95%; hindering the redevelopment of the area; people leaving late at night; loud music and noise; loitering; Club being open until 3:00 a.m.; Club disturbing one of the quieter streets in the area; reducing the property values of the area, which includes newer homes than other parts of the area; and the impact on the children, including children with disabilities, who reside in the area and play at the nearby playground. (*Id.* at 131a-39a, 161a-209a.) One resident testified in favor of the Application. (*Id.* at 210a-11a.)

After reviewing the record, the Board granted intervenor status to the Bureau of Police and Rosedale, and protestant status to those who resided within 500 feet from the proposed licensed premises and testified at the hearing.

The Board denied the Application for the following reasons. Club is not a "club" as defined by Section 102 of the Liquor Code,[5] 47 P.S. § 1-102, because Club

---

[5] A "club" is

> any reputable group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience,

5

provided no evidence regarding what types of activities, goals, or community fellowship in which it engages. Rather, the evidence showed only Club's attempts to obtain a liquor license to generate money to pay for its operations, which demonstrated that the sale of alcohol is not secondary, but primary, to Club. (Bd. Op. at 27.) Moreover, the double transfer of the License would violate Sections 403(f) and 404(a) of the Liquor Code,[6] 47 P.S. §§ 4-403(f), 4-404(a). Although Mr.

> **having some primary interest and activity to which the sale of liquor or malt and brewed beverages shall be only secondary**, which, if incorporated, has been in continuous existence and operation for at least one year, and if first licensed after June sixteenth, one thousand nine hundred thirty-seven, shall have been incorporated in this Commonwealth, and, if unincorporated, for at least ten years, immediately preceding the date of its application for a license under this act, and which regularly occupies, as owner or lessee, a clubhouse or quarters for the use of its members. Continuous existence must be proven by satisfactory evidence. The board shall refuse to issue a license if it appears that the charter is not in possession of the original incorporators or their direct or legitimate successors. The club shall hold regular meetings, conduct its business through officers regularly elected, admit members by written application, investigation and ballot, and charge and collect dues from elected members, and maintain such records as the board shall from time to time prescribe, but any such club may waive or reduce in amount, or pay from its club funds, the dues of any person who was a member at the time he was inducted into the military service of the United States or was enrolled in the armed forces of the United States pursuant to any selective service act during the time of the member's actual service or enrollment. The term includes a privately-owned private golf course.

47 P.S. § 1-102 (emphasis added).

[6] Section 403(f) of the Liquor Code provides "[t]he board shall refuse to issue licenses to clubs when it appears that the operation of the licensed business would inure to the benefit of individual members, officers, agents or employes of the club, rather than to the benefit of the entire membership of the club." 47 P.S. § 4-403(f). Section 404(a) of the Liquor Code provides, in relevant part:

> (a) Upon receipt of the application and the proper fees, and **upon being satisfied of the truth of the statements in the application** that the applicant and management company or companies, if any, are the only persons in any manner pecuniarily interested in the business so asked to be licensed and **that no other**

6

Barnes testified that no individual will profit from Club's operation, the facts that Mr. Sparrow is Club's President, Club's landlord (receiving rent money), Club's secured creditor, and the terms of repayment on the loan had not yet been negotiated, gave "the Board pause as to whether the proposed transfer is more to Mr. Sparrow's personal benefit than the club's as a whole" in violation of Section 403(f). (Bd. Op. at 28-29.) Furthermore, while the Board could not definitively find "that Mr. Sparrow would have an unlawful pecuniary interest in the [L]icense . . . there is

---

**person will be in any manner pecuniarily interested therein during the continuance of the license**, except as hereinafter permitted, **and** that the applicant is a person of good repute, **that the premises applied for meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a . . . club, as defined in this act,** and that the issuance of such license is not prohibited by any of the provisions of this act, **the board . . . in the case of a club may, in its discretion, issue or refuse a license**: . . . And provided further, That **the board shall refuse . . . the transfer of any license to a new location . . . if, in the board's opinion, such new license, transfer or extension would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed** . . . .

47 P.S. § 4-404(a) (emphasis added). The Board's regulations define "pecuniary interest" as

An interest that sounds in the attributes of proprietorship. There is a rebuttable presumption of a pecuniary interest when a person receives 10% or more of the proceeds of the licensed business or when control is exercised by one or more of the following:

(i)     Employing a majority of the employees of the licensee.

(ii)    Independently making day-to-day decisions about the operation of the business.

(iii)   Having final authority to decide how the licensed business is conducted.

40 Pa. Code § 1.1.

7

enough evidence to provide cause for concern" based on Mr. Sparrow's various roles in Club and the lack of known repayment terms. (*Id.* at 29-30.) Additionally, Club had not submitted all of the necessary documents and information required in a transfer application as required by Section 403 of the Liquor Code, 47 P.S. § 4-403.[7] Finally, there was sufficient evidence that the transfer would adversely affect the health, welfare, peace, and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises. Club's stated goal is to increase its membership from 33 to a couple of hundred, who would use on-street parking, and have a DJ on the weekends, which would strain the Bureau of Police's resources. The area is 90% residential, and the testimony described the efforts made to improve the quality of

---

[7] Section 403(a) and (e) of the Liquor Code require that:

(a) Every applicant for a . . . club liquor license or for the transfer of an existing license to another premises not then licensed . . . shall file a written application with the board in such form and containing such information as the board shall from time to time prescribe, which shall be accompanied by a filing fee and an annual license fee . . . .

***

(e) . . . . Every club applicant shall file with and as a part of its application a list of the names and addresses of its members, directors, officers, agents and employes, together with the dates of their admission, election or employment, and such other information with respect to its affairs as the board shall require.

47 P.S. § 4-403(a), (e). The regulations require that photographs "shall be furnished to the Board's representative by the following: Individuals; members of partnerships; and principal officers of a corporation applying for Retail Liquor Licenses, Retail Dispenser Malt Beverage Licenses, Distributor Licenses and Importing Distributor Licenses, except Public Service and Club Licenses" and "Current managers/stewards and proposed managers/stewards." 40 Pa. Code § 3.31(a). The regulation also states that a liquor license will not be transferred unless, *inter alia*, the application avers that the proper municipal authorities have found that the proposed licensed premises "meet all the sanitary requirements for a public eating place in the municipality . . . as provided by statute, ordinance or regulation and that documentary evidence thereof is, and shall at all times be, displayed on the licensed premises. 40 Pa. Code § 5.41(a).

8

life in that neighborhood, which would be negatively impacted in various ways by granting the Application.

Club appealed and, following its de novo review,[8] common pleas overturned the denial and directed that the Application be approved. Common pleas concluded that: the Board could not assert that Club was not a "club" because it previously had approved a club catering license for Club in 2010; the record showed that Mr. Sparrow would not have an unlawful pecuniary interest in the License; and there was no evidence that showed a direct or immediate harm to the area within 500 feet of the proposed premises that would result from the transfer. Common pleas did not directly address whether the transfer of the License would inure to the benefit of Mr. Sparrow rather than Club's general members or that Club had not filed all of the required information and documents in Club's Application. The Board now appeals to this Court.[9]

Before this Court, the Board challenges common pleas' decision on multiple bases. Among those is its argument that common pleas erred in overturning its denial and directing that the Application be approved because Section 404(a) of the Liquor Code allows **only** the licensee and its management company (if it has one) to

---

[8] Under common pleas' de novo standard of review pursuant to Section 464 of the Liquor Code, 47 P.S. § 4-464, common pleas, based on the de novo record, "may sustain, alter, modify or amend the Board's action even if it does not find materially different facts." *U.S.A. Deli, Inc. v. Pa. Liquor Control Bd.*, 909 A.2d 24, 27 (Pa. Cmwlth. 2006). Applying this broader standard, we have held that if the Board has discretion to take an action, common pleas can exercise the same discretion under Section 464 of the Code. *Id.* at 28.

[9] Our review in liquor license cases "is limited to determining whether [common pleas'] findings of fact are supported by substantial evidence and whether [common pleas] committed an error of law or an abuse of its discretion." *In re Application for Liquor License of Thomas*, 829 A.2d 410, 413 n.3 (Pa. Cmwlth. 2003).

have a pecuniary interest in a license.[10]  47 P.S. § 4-404(a).  The Board points out that the record here shows that Mr. Sparrow is Club's creditor and landlord, and that the terms of the repayment of the $18,000 Mr. Sparrow is loaning to Club have not been finalized and will not be until the transfer is approved.  The Board contends that, without knowing the terms of repayment or Club's lease, as well as Mr. Sparrow's day-to-day input in Club's operations, it was impossible to determine whether Mr. Sparrow will have an unlawful pecuniary interest in Club's operations.  Thus, it properly denied the Application and common pleas erred in reversing that denial and directing the approval of the Application.

Club responds that Mr. Sparrow will not have an unlawful pecuniary interest and there is no evidence that he will receive any percentage of the proceeds of Club's business, let alone the 10% set forth in 40 Pa. Code § 1.1, or that he will have the final decision-making authority for Club's operations.  According to Club, none of Mr. Sparrow's titles (president, landlord, secured creditor) equate to an unlawful pecuniary interest or proprietorship interest in the License, Mr. Barnes testified that no individual will profit from Club's business, and, if the Board had concerns regarding Mr. Sparrow's involvement, it could have subpoenaed him to answer questions about that involvement.  Club argues that this situation is analogous to *Parks v. Liquor Control Board*, 403 A.2d 628, 630 (Pa. Cmwlth. 1979), where the only evidence in the record showed that the applicant would be the sole owner and yet the Board denied the license on the basis that another person would have an unlawful pecuniary interest.  Club contends that, similar to *Parks*, there is no direct

_____

[10] The Board also argues that common pleas erred because Club is not a "club" under the Liquor Code, the License will inure to the benefit of Mr. Sparrow rather than to Club's general Members, Club did not submit all of the forms and information required, and granting the Application would adversely affect the health, welfare, peace, and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.

10

evidence establishing that Mr. Sparrow will have an unlawful pecuniary interest, and the Board could not deny the Application on that basis.

Relevant to this issue, Section 404(a) of the Code provides, in relevant part:

> (a) Upon receipt of the application and the proper fees, and **upon being satisfied of the truth of the statements in the application** that the applicant and management company or companies, if any, are the only persons in any manner pecuniarily interested in the business so asked to be licensed and **that no other person will be in any manner pecuniarily interested therein during the continuance of the license**, except as hereinafter permitted, . . . **the board** . . . **in the case of a club may, in its discretion, issue or refuse a license**: . . . .

47 P.S. § 4-404(a) (emphasis added). The Board's regulations define "pecuniary interest" as

> An interest that sounds in the attributes of proprietorship. There is a rebuttable presumption of a pecuniary interest when a person receives 10% or more of the proceeds of the licensed business or when control is exercised by one or more of the following:
>
> (i) Employing a majority of the employees of the licensee.
>
> (ii) Independently making day-to-day decisions about the operation of the business.
>
> (iii) Having final authority to decide how the licensed business is conducted.

40 Pa. Code § 1.1. Pursuant to these provisions, the Liquor Code prohibits anyone other than the licensee or its management company from having a pecuniary interest in the license, which is defined as having the "attributes of proprietorship." 47 P.S. § 4-404(a); 40 Pa. Code § 1.1. A rebuttable presumption of pecuniary interest arises if the person receives 10% or more of the proceeds of the licensed business or exercises a particular level of control over the licensed business. 40 Pa. Code § 1.1.

11

Liquor license **applicants bear the burden of proving**, to the Board's satisfaction, that they meet the requirements necessary to obtain a liquor license under Section 404(a) of the Liquor Code. *St. Rd. Bar & Grille, Inc. v. Pa. Liquor Control Bd.*, 876 A.2d 346, 353-54 (Pa. 2005). Thus, Club had the burden of proving that it is "the only person[] in any manner pecuniarily interested in the business so asked to be licensed and **that no other person will be in any manner pecuniarily interested therein during the continuance of the license** except as hereinafter permitted." 47 P.S. § 4-404(a) (emphasis added).

Here, the only direct evidence of the financial relationship between Mr. Sparrow and Club is Mr. Barnes' testimony that no individual would profit from Club's business, Club would be paying Mr. Sparrow between $500 and $750 in rent, and Club would be repaying the loan **but the terms of repayment were not yet set**. (R.R. at 232a, 237a-38a, 258a.) While common pleas relied upon Mr. Barnes' testimony and the absence of direct evidence of an unlawful pecuniary interest, we disagree that this testimony and a lack of evidence satisfies Club's burden of proof.

There is no question that Mr. Sparrow will have **some** pecuniary interest in Club's ongoing business, which is based on its acquiring the License, as he is Club's landlord and its creditor. It is the **level** of that interest that is in question. Because the terms of repayment of the loan had not been negotiated, those terms could not have been considered by the Board, or by common pleas, to determine if Mr. Sparrow would have an unlawful pecuniary interest. In deliberately delaying the negotiation of these terms until **after** a decision on the Application was made, **Club presented an incomplete picture regarding its financial relationship with Mr. Sparrow**. Given the incomplete picture **created by Club** and the evidence that Mr. Sparrow would have some pecuniary interest in Club's business, Mr. Barnes'

testimony that no individual would profit from Club's business is not substantial evidence, that is, "evidence that a reasonable mind might accept as sufficient to support [the] conclusion," *Spencer v. City of Reading Charter Board*, 97 A.3d 834, 842 (Pa. Cmwlth. 2014), that Mr. Sparrow "will [not] be **in any manner** pecuniarily interested [in Club's business] during the continuance of the [L]icense," 47 P.S. § 4-404(a) (emphasis added). Club appears to fault the Board for not subpoenaing Mr. Sparrow to ask questions regarding any pecuniary interest he may have; however, it is **Club** that bore the burden of proving that he would not have an unlawful pecuniary interest. Based on this record, we conclude that Club has not done so, and, therefore, common pleas erred in overturning the Board's denial and directing that the Application be approved.[11]

*Parks* does not require a different result. In that case, the only evidence regarding the ownership of the business indicated that the applicant would be the sole owner, but the Board found that her husband, "who [wa]s not a responsible person of good reputation," would also have a pecuniary interest and denied the application on that, as well as another, basis. *Parks*, 403 A.2d at 630. On appeal, the court of common pleas reversed the denial based on the unlawful pecuniary interest, and this Court agreed. We held that "[t]here was **absolutely no evidence** in the record to substantiate the Board's finding **that applicant's husband would also have a pecuniary interest in the business**." *Id.* (emphasis added).[12] In contrast to *Parks*, there is evidence that Mr. Sparrow would have **some** pecuniary interest in

---

[11] Moreover, given that Club's Board consists of multiple members of the Sparrow family, sitting as President, Secretary, and Treasurer, there is a question regarding the level of control Mr. Sparrow could exercise over Club's day-to-day operations or if he would have final authority over how Club's business would operate. *See* 40 Pa. Code § 1.1(ii), (iii).

[12] This Court, in *Parks*, ultimately reversed the denial of the license in its entirety, holding that the court of common pleas had erred in affirming the Board's secondary basis for denying the license. 403 A.2d at 630-31.

13

Club's ongoing business, which is based on Club acquiring the License, as its landlord and its creditor. Moreover, the record contains evidence, the Prior Purchase Agreement, reflecting that Club, albeit before it had obtained counsel, was willing to sell to Mr. Sparrow its charter and the liquor license it was seeking to purchase in exchange for a loan to acquire that license. (R.R. at 284a.) Under these circumstances, Club's reliance on *Parks* is misplaced.

Because we conclude that common pleas erred on this basis, we will not address the Board's remaining allegations of error, save one. The Board argues that common pleas erred because Club does not qualify as a "club" as defined by Section 102 of the Code, 47 P.S. § 1-102. Common pleas held that the Board was precluded from finding that Club was not a "club" for the purposes of this License because it granted Club a club liquor license in 2010. While we will not address the merits of the Board's arguments on this issue, it is important to clarify that **each application** for a liquor license **is subject to the limitations prescribed in the Liquor Code**, and a Board's decision on one application does not necessarily preclude a different decision on a subsequent application. *See W. Reading Tavern, Inc. v. Pa. Liquor Control Bd.*, 710 A.2d 648, 651 (Pa. Cmwlth. 1998) (holding that an applicant whose prior application has been denied may file a new application for the Board's consideration); *see also AWT Beaver Independ. Deli, Inc. v. Commonwealth*, 876 A.2d 500, 503 (Pa. Cmwlth. 2005) (citing *West Reading Tavern, Inc.* and holding that a prior determination that a proposed transfer of a liquor license would adversely impact the welfare, health, peace, and morals of the community did not bar relitigation of that issue on a second application). While "the Board's reversal of its earlier conclusions on the identical issues and facts in a subsequent decision may amount to an abuse of discretion, if the Board fails to state any valid reason for its

14

action," where the Board's actions on a subsequent application differ from the first, but are "based on new findings of fact and conclusions of law after considering all the evidence presented at the second hearing, the Board [does] not abuse its discretion." *W. Reading Tavern, Inc.*, 710 A.2d at 651-52. Although these cases involved the denial of an initial application and grant of a subsequent application following a new hearing, the principles are the same, and the Board's authority to act differently on a second application based on new evidence also applies here. Thus, the fact that the Board approved Club's application in 2010 did not preclude it from revisiting whether Club still qualified as a "club" under the Liquor Code in considering Club's second application based on the evidence presented at the second hearing.

Accordingly, we reverse common pleas' Order.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge

Judge McCullough dissents.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PAC Club of Western PA        :
                                          :

           v.                    :    No. 255 C.D. 2017

                                            :

Pennsylvania Liquor Control Board,    :
                 Appellant    :

# **O R D E R**

    **NOW**, January 3, 2018, the Order of the Court of Common Pleas of Allegheny County, entered in the above-captioned matter, is **REVERSED**.

_____

**RENÉE COHN JUBELIRER,** Judge
